DION THOMAS,                               )
                                          )
     Plaintiff,                         )
                                          )
v.                                        )    Case No. 1:16-CV-112
                                          )
BURNHAM TRUCKING COMPANY, INC.,           )
                                          )
     Defendant.                         )

## OPINION AND ORDER

This matter is before the Court for resolution of several pending motions filed by

Defendant Burnham Trucking Company, Inc., including a Motion for Summary Judgment (ECF

27), a Motion to Strike Undisclosed Expert Opinions (ECF 36), and a Motion to Deem its

Statement of Undisputed Material Facts Admitted (ECF 38). Plaintiff Dion Thomas filed briefs

in opposition to all three motions (ECF 31, 45 and 48) and Burnham filed reply briefs (ECF 39,

46 and 51).[1] For the reasons discussed below, the motion for summary judgment is GRANTED

and the motion to strike and the motion to deem statement of facts admitted are DENIED as

moot.

## BACKGROUND

Dion Thomas, a truck driver employed by PTO Services, Inc., sustained physical injuries,

including a broken leg, while securing a large steel slab on a tractor trailer on February 26, 2014.

Complaint (ECF 4). The truck Thomas was loading was owned by Burnham Trucking and the

---

[1] Defendant Burnham also filed a brief titled "Answer to Additional Facts of Plaintiff's
Response." ECF 37. This pleading is essentially an additional or supplemental reply brief (the
filing of which Thomas did not object to) and challenges the relevance and even truthfulness of
many facts Thomas presents in his response brief. The Court reviewed this pleading and it is
discussed below.

accident occurred at a steel plant in Burns Harbor, Indiana, that is owned and operated by ArcelorMittal, an international steel and mining company. *Id*., p. 1. Thomas filed this lawsuit against Burnham Trucking in state court in Lake County, Indiana (his county of residence), on February 25, 2016, and Burnham removed it to this Court on March 31, 2016, on the basis of diversity jurisdiction. Notice of Removal (ECF 1).[2] Thomas asserts that Burnham Trucking provided him "with equipment consisting, in part, of chains, bars and binders to use to secure the steel products [on] its trucks." *Id*., p. 2. Thomas further asserts that "[w]hile [he was] attempting to secure the slab Burnham's equipment failed and caused [him] serious injuries[.]" *Id*. Thomas alleges that "Burnham knew, or should have known, that the equipment it provided to Thomas was defective, inadequate and otherwise unsuitable to use for securing steel products." *Id*. Thomas sued Burnham Trucking on a single state law negligence claim. *Id*. He summarizes his claim this way:

> Burnham was negligent by failing to exercise reasonable care for the protection of Thomas while he was using its equipment; failing to provide reasonably safe equipment for Thomas to use; failing to properly instruct Thomas how to use its equipment; and failing to warn him of dangers Burnham knew, or reasonably should have known, in using said equipment.

*Id*. Thomas alleges that he "sustained severe and permanent injuries" as a result of Burnham Trucking's negligence and the company should compensate him for those injuries.

Burnham Trucking argues that it cannot be held liable for Thomas' injuries because Thomas was employed by PTO Services at the time of the accident, a company working under contract with Burnham to provide steel hauling services, and "PTO–not Burnham–was

---

[2] Burnham is a Delaware corporation with its principal place of business in Chicago. Notice of Removal, p. 2.

responsible for all aspects of Thomas's hiring, safety and training, including selecting and providing the equipment alleged to be defective." Motion for Summary Judgment, p. 1. Burnham argues that "[u]nder Indiana law, Burnham owed no duty to provide for the safety of Thomas, as an employee of its independent contractor. Absent a duty, there can be no liability in negligence." *Id*., pp. 1-2. Burnham also argues that "[e]ven if [it] did owe Thomas a duty, it cannot be held liable in the ways alleged[,]" because Thomas's allegations provide "no basis to find that Burnham failed to exercise reasonable care under the circumstances." *Id*., p. 2. Because this Court finds Burnham's primary argument to be correct–that it did not owe Thomas a duty of care as a matter of law–the Defendant's alternative arguments that it was not negligent need not be addressed, as they are based on the assumption that a duty existed.

## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support that asserted fact with citations to the record, including depositions, documents, or affidavits. Fed.R.Civ.P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. "A disputed fact is material if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). "An issue of fact is 'material' if it is outcome determinative[.]" *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, "'a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.'" *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010). However, summary judgment is appropriate and should be granted if the moving party shows there is "no genuine dispute as to any material fact," and that he is entitled to summary judgment as a matter of law. *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (quoting Fed.R.Civ.P. 56(a)).

**DISCUSSION**

As stated above, Burnham Trucking argues that it is entitled to summary judgment

because it was not Thomas's employer and owed him no duty of care at the time of the accident

giving rise to this lawsuit. Memorandum in Support (ECF 28), p. 2. According to Burnham:

> Thomas was working as an employee of PTO Services, Inc. . . . at the time of his
> injury. Burnham hired PTO, an independent contractor, to supply it with qualified
> truck drivers, safety and dispatch personnel. Pursuant to the contract with
> Burnham, PTO personnel hired Thomas, trained him and supervised all aspects of
> his work. PTO also selected and provided the equipment Thomas was using at the
> time of his injury. . . . The undisputed evidence has proven the allegations in
> Thomas' complaint untrue. It is undisputed that PTO–not Burnham–selected and
> provided the equipment Thomas was using at the time of his injury. . . . It is
> undisputed that PTO–not Burnham–trained Thomas and supervised the safety
> aspects of his work. Thomas has not alleged any basis to find that Burnham owed
> Thomas a duty or that it can be liable for PTO's allegedly negligent acts or
> omissions.

*Id*., pp. 1-2. If Burnham owed no duty of care to Thomas, then Thomas cannot proceed with this

lawsuit because he cannot establish a prima facie case of negligence. Under Indiana law "[t]he

elements of a negligence action are: (1) a duty owed to plaintiff by defendant; (2) breach of that

duty by conduct falling below the applicable standard of care; and (3) compensable injury

proximately caused by the breach of duty." *Himsel v. Indiana Pork Producers Ass'n*, 2018 WL

845496, at *7 (Ind.Ct.App. Feb. 14, 2018) (citing *Williams v. Cingular Wireless*, 809 N.E.2d

473, 476 (Ind.Ct.App. 2004)). If Thomas cannot establish that Burnham owed him a duty of care

then the inquiry is over and Burnham is entitled to summary judgment.

Burnham supports its argument that it did not owe a legal duty to Thomas by explaining

that "[o]n April 1, 2005, Burnham entered into an agreement with PTO . . . to supply qualified

truck drivers to assist its steel hauling cartage." Memorandum in Support, p. 2 (citing

Defendant's Exh. A, "PTO Agreement," (ECF 28-1)). Burnham contends that "PTO was solely responsible for determining the manner, means and mechanics of how its drivers would haul the freight. . . . PTO was responsible for all aspects of the relationship with its employees who drove Burnham's trucks, including, but not limited to, hiring, supervising, paying, disciplining and handling all labor relations." *Id*. Burnham also points out that "the PTO Agreement specifically provided:

> P.T.O. will hire and employ all personnel required to perform its obligations under this Agreement, shall have no authority to hire any person on behalf of [Burnham], and any person whom it may employ shall be deemed solely P.T.O.'s employee. **P.T.O. shall at all times be regarded as an independent contractor to [Burnham], and the relationship between P.T.O. and [Burnham] shall in no event be construed to be that of principal and agent**, master and servant or employer and employee.

*Id*., p. 3 (quoting Exh. A) (boldface in original). This couldn't be clearer, argues Burnham–it was PTO, not Burnham, that owed a duty of care to Thomas.

Thomas concedes that he was an employee of PTO Services and that PTO hired truck drivers to haul steel pursuant to the long-standing contract between PTO and Burnham. Plaintiff's Response, p. 2; *see also* Complaint, p. 1, ¶ 3 ("On February 26, 2014[,] Thomas was employed as a truck driver for PTO Services, Inc.") and ¶ 4 ("On February 26, 2014[,] PTO Services, Inc., was under a contract or agreement to provide truck drivers to operate trucks and other equipment controlled or owned by Burnham for purposes of transporting various steel products for the ArcelorMittal steel company."). Those undisputed facts notwithstanding, Thomas argues that Burnham owed him a duty of care under either "the Loaned Servant

Doctrine" or a "dual employer" theory.[3] *Id.*, p. 1. More specifically, Thomas asserts that even though he was employed by PTO Services, the operations of the two companies were so intertwined and commingled that Burnham owed him a duty of care just as it would if it employed him directly. Thomas contends that summary judgment is inappropriate for the following reasons:

> Under the Loaned Servant Doctrine, there is a genuine issue of material fact whether the employees who trained the Plaintiff, supervised him, and provided him with the equipment he was using at the time he was injured were acting as employees or agents of Burnham.

> There is also a genuine issue of material fact whether these employees were acting in a dual capacity as employees and agents of both PTO Services, Inc. and Burnham.

*Id.*

Burnham retorts that "Plaintiff's arguments fail both procedurally and, based on the undisputed facts of this case, as a matter of law." Defendant's Reply, p. 2. Burnham insists that Thomas ignores the language of the contract between PTO and Burnham, that he misrepresents facts in his effort to show that PTO and Burnham were effectively his "dual employers," and that "the legal requirements of the loaned servant doctrine are not satisfied in this case." *Id.*, pp. 1-2. According to Burnham, "[d]espite plaintiff's Herculean attempts at obfuscation, he cannot avoid the fundamental problem in his case: that Burnham owed him no duty of care." *Id.*, p. 2.

Thomas makes many factual assertions to support his argument in opposition to Burnham's motion. These include the following:

---

[3] Throughout his response brief Thomas refers to the "loaned servant doctrine." The Indiana courts though, including the Indiana Supreme Court, employ the term "*borrowed servant*," *see e.g., Hale v. Kemp*, 579 N.E.2d 63, 64 (Ind. 1991), and so this Court will do likewise.

1) "Burnham had only one employee: Yvonne Meurkson. . . . Although Ms. Meurkson was in charge of Burnham, all the other personnel who worked at the Burnham plant were provided by PTO." Plaintiff's Response, p. 3.

2) "John Jackson was . . . and independent contractor hired by PTO to function serve [sic] as Safety Manager for Burnham. . . . Before being hired by PTO, Mr. Jackson worked at the Burnham plant for the previous 21 years for PTO's predecessors. When PTO and Burnham entered into the staffing agreement, Ms. Meurkson requested PTO to hire Mr. Jackson and assign him to the Burnham plant. . . . Mr. Jackson worked exclusively at the Burnham plant, where Burnham provided him an office." *Id.*

3) Although "Mr. Jackson had discretion to determine what safety procedures would be implemented at Burnham, he could only implement the procedures if they were first approved by Ms. Meurkson." *Id.*, p. 4.

4) "Robert Bishop was hired as a Safety Director and Risk Manager by PTO and was assigned to the Burnham plant to train and supervise the truck drivers, including the Plaintiff. . . . Like Mr. Jackson, Mr. Bishop worked exclusively at the Burnham plant, where he likewise was provided an office." *Id.*, p. 5.

5) "Like his colleagues, Joe Whorton was employed by PTO and assigned to Burnham as the Terminal Safety Coordinator. . . . Yvonne Meurkson selected Mr. Whorton for this job. . . . Mr. Jackson and Mr. Whorton were responsible for conducting safety training of the truck drivers, including the Plaintiff. . . . Mr. Whorton supervised [drivers] to ensure they properly secured the loads. . . . Mr. Jackson was the head of safety training and was primarily responsible for training drivers on how to properly secure loads." *Id.*, p. 6.

6) "It was Burnham's policy to issue cheater bars and snap binders to its drivers for [the] purpose of securing loads." *Id.*, p. 7.

7) Both Mr. Jackson and Mr. Whorton were "provided with business cards with the Burnham logo and listing the Burnham plant as [their] place of employment." *Id.*, pp. 18-19.

Based on these assertions, Thomas argues that "[a]lthough nominally employees of PTO, under the Loaned Servant Doctrine, there is evidence from which a jury could conclude that [Jackson, Whorton and Bishop] either functioned as agents or employees of Burnham or were under the dual control of both Burnham and PTO." *Id.*, p. 11. Thomas is correct that "under the borrowed servant doctrine, the question of which employer is liable for an employee's negligence is a question for the trier of fact." *Logestan v. Hartford Steam Boiler Inspection & Ins. Co.*, 626 N.E.2d 829, 831 (Ind.Ct.App. 1993) (citing *Progressive Construction and Engineering Co. v. Indiana and Michigan Electric Co.*, 533 N.E.2d 1279, 1284 (Ind.Ct.App. 1989)). But as Burnham points out, the question before this Court is whether Burnham owed any duty to Thomas in the first place and that is a question of law for the Court to decide. Defendant's Memorandum, p. 10 (citing *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003) ("Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide.")); *see also, Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992) (same); *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) ("Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law."); *Gariup Const. Co. v. Foster*, 519 N.E.2d 1224, 1228 (Ind. 1988) ("It is the exclusive province of the court to determine whether the relation existing between the parties gives rise to a duty to exercise care.").

Thomas argues that the borrowed servant doctrine is applicable in this case because Burnham was essentially a puppet master with the ability to control PTO's hiring and firing decisions, provide equipment for PTO drivers to use, and generally "control . . . the means used to reach [the] result" (i.e., to facilitate the hauling of steel to Burnham's site in Illinois). Plaintiff's Response, pp. 12-15.

Burnham takes issue with Thomas's theory and his factual recitation, arguing that he mischaracterizes (or intentionally misrepresents) these facts in his attempt to establish the applicability of the borrowed servant doctrine or a dual employer theory. Burnham argues as follows in its reply brief:

> In [his] response, plaintiff attempts to entirely change his theory of the case. He abandons his allegations that *Burnham* acted negligently, and instead attempts to claim that individuals working for plaintiff's employer, *PTO*, were negligent. Plaintiff then, for the first time, argues that those individuals were simultaneously acting both as PTO agents and as agents of Burnham under the loaned servant doctrine and/or that their conduct should be imputed to Burnham by some unalleged agency theory.

Defendant's Reply, pp. 1-2. Burnham elaborates as follows:

> In his response . . . Thomas seeks to entirely change both the fundamental facts at issue and the straightforward negligence claim alleged in the Complaint. Thomas now, in his response papers–asserts that, although Thomas was employed by PTO, and although PTO workers trained and supervised Thomas, those PTO workers were somehow Burnham's loaned servants . . . or subject to a dual employment relationship under the Restatement of Agency § 226. . . . As such, Thomas argues that Burnham should be responsible for PTO's negligence. Thomas cannot defeat summary judgment by so radically reframing his claim.

*Id*., pp. 5-6. In short, Burnham claims that Thomas's factual assertions regarding the business relationship between Burnham and PTO are "exaggerate[d]," "not accurately presented," "taken out of context," and "misstated." Defendant's Answer to Additional Facts of Plaintiff's Response

(ECF 37), pp. 1-3. One prime example of this, according to Burnham, is Thomas's repeated

references in his brief (and in his Complaint) to the "Burnham plant" in East Chicago, Indiana.

Throughout his brief Thomas makes reference to "the Burnham plant," a reference to the site in

East Chicago where truck drivers, including Thomas, picked up their trucks at the beginning of

the work day and parked them at the end of it. *Id*., p. 5. Burnham claims this language is

misleading. As Burnham explains it, "[t]here is no 'Burnham plant. . . . Burnham maintained a

terminal yard wherein Mr. Thomas would pick his truck up in the morning and park his truck at

the end of the day. . . . Burnham operated out of what was essentially a parking lot for trucks that

it shared with Penske truck rental." *Id*. Burnham insists that "Plaintiff's repeated reference to the

'Burnham plant' incorrectly implies that the plaintiff was hauling steel into or out of the

Burnham 'plant.'"

*Id*., p. 6. Burnham also challenges Thomas's repeated statements that "Mr. Jackson worked

exclusively *at the Burnham plant*, where Burnham provided him an office[,]" or that Jackson

"was *the person at Burnham* who was responsible for training and supervising . . . the

Plaintiff[,]" or that "[l]ike Mr. Jackson, Mr. Bishop worked exclusively *at the Burnham plant*."

Plaintiff's Response, pp. 3, 4, 5 (italics added). Given that the "Burnham plant" was nothing

more than a terminal where PTO drivers picked up and dropped off trucks under the supervision

of PTO employees (including Jackson and Bishop), Burnham argues that it is misleading for

Thomas to characterize the East Chicago truck lot as a "Burnham plant," which implies (or

which the Court is urged to infer) that it was some sort of Burnham-operated site rather than

simply a truck parking lot run by PTO employees pursuant to the companies' Agreement.

Burnham also claims that Thomas "misstates" testimony when he asserts that "'Burnham

directed PTO on which drivers to hire.'" *Id.*, p. 4 (quoting Plaintiff's Response, p. 5). According to Burnham, this factual assertion is an incorrect interpretation of the deposition testimony of Mr. Bishop, whom Burnham claims "only state[d] that PTO safety personnel (such as Mr. Bishop and Mr. Jackson) would interview potential PTO drivers to see if they met the 'requirements' of PTO and Burnham; the cited testimony does not state that Burnham *directed* PTO as to its hiring decisions." *Id.* Yet another example of what Burnham calls Thomas's "obfuscation" is his assertion that "Mr. Jackson testified that all the equipment . . . he issued to drivers was provided by Burnham." Plaintiff's Response, p. 13. Thomas notes that "Indiana courts have found that providing tools and equipment [is] some evidence of an employer-employee relationship." *Id.* (citing *Degussa*, 744 N.E. at 413) (additional citations omitted). That is a correct statement of law, but Burnham again claims it is based on a misleading factual assertion. Burnham concedes that it paid for the equipment, but states that "PTO, through Jackson, was in charge of . . . the equipment used by . . . plaintiff[,]" that "Jackson ordered and selected the equipment to be used in tying down loads[,]" that he "monitored equipment for wear and made determinations as to when it should be replaced." Defendant's Reply, pp. 13-16 (citing deposition testimony of Carpenter (ECF 31-3)[4], Thomas (ECF 31-1), and Whorton (ECF 31-2)).[5] In short, Burnham contends that Thomas's response to its motion improperly contorts the facts in an attempt to pigeonhole them into a borrowed servant or dual employer theory of liability, which Burnham

---

[4] William Carpenter is president and CEO of PTO Services. Defendant's Memorandum, Exh. B.

[5] Thomas actually concedes many relevant facts, including that "Mr. Jackson's job duties included maintaining the inventory of equipment" issued to PTO drivers (including him) and that while Burnham paid for that equipment it was Jackson who ordered it, maintained it, and provided it to drivers. Plaintiff's Response, p. 13.

contends is inapplicable under the circumstances of this case. Finally, Burnham argues that the assertions Thomas makes to support his borrowed servant argument "have nothing to do with evaluating the employment relationship *between Thomas and PTO*–that relationship is not in dispute. Thomas admitted that he is a PTO employee and [does] not . . . claim otherwise." Defendant's Reply, p. 12.

Finally, Burnham points to additional evidence that supports its argument that PTO was at all times an independent contractor for Burnham and that it was PTO that "controlled" Thomas's employment, notwithstanding any general input from Burnham or collaboration between Meurkson and Jackson, which Burnham contends is typical of contractor–subcontractor relationships. Defendant's Memorandum, p. 13 (citing *Armstrong v. Cerestar U.S.A., Inc.*, 775 N.E.2d 360, 369 (Ind.Ct.App. 2002) (company that contracts with independent contractor not liable for alleged negligence of that contractor); *Aldridge v. Cargill Incorporated*, 2014 WL 1414882, *5 (N.D. Ind. April 10, 2014) (employees of independent contractor generally not owed duty of safe work environment by entity that hired that independent contractor)).

Burnham maintains that its normal, arms-length business relationship with PTO–or more specifically PTO's status as an independent contractor–is further evidenced "by three contracts: (1) [t]he April 1, 2005[,] Contract between Burnham and PTO; (2) the July 11, 2008[,] Independent Contractor Agreement [between PTO and Jackson]; and (3) [t]he April 30, 2013[,] Agreement between PTO Services and Teamsters Local Union No. 142. These three agreements consistently place all responsibility for driver safety and oversight on PTO and its contractor, Jackson. Those contracts are unambiguous in establishing that Burnham did not employ Thomas; that PTO was not acting as Burnham's agent; and that PTO and Jackson were in charge of all

issues related to driver safety generally (and equipment selection specifically)." Defendant's Memorandum, p. 11.

Burnham quotes extensively from its contract with PTO, noting that it includes the following express language:

1) "P.T.O. will hire and employ all personnel required to perform its obligations under this Agreement, shall have no authority to hire any person on behalf of [Burnham], and any person whom it may employ shall be deemed solely P.T.O.'s employee. P.T.O. shall at all times be regarded as an independent contractor to [Burnham], and the relationship between P.T.O. and [Burnham] shall in no event be construed to be that of principal and agent, master and servant, or employer and employee." Defendant's Memorandum, p. 12 (quoting Exh. A (ECF 28-1), p. 2;

2) "P.T.O. shall have the sole responsibility for all aspects of the employment relationship, including, but not limited to, hiring; supervision; disciplining and terminating; and setting wages, benefits and terms of employment." *Id*. (quoting Exh. A, p. 3);

3) "P.T.O. shall have the exclusive responsibility to supervise and direct its employees." *Id*.; and

4) "The parties intend that nothing in the Agreement shall be construed to conclude that [Burnham] is the employer, jointly or single [sic], of the employee furnished by P.T.O." *Id*. (quoting Exh. A, p. 9).

Burnham also notes that PTO's own contract with Jackson "made PTO and [Jackson] responsible for equipment and safety." *Id*. Burnham points out that this contract, entered into on July 11, 2008, expressly provided that "[Jackson] shall be responsible for . . . providing various Safety Consulting, Accident Investigation and Reporting; Client Equipment Inspections; . . . and other Safety duties as needed[]" and that "Jackson will supply all tools and instruments required

to perform services under this Agreement." *Id*. (quoting Exh. H (ECF 28-8), pp. 1 and 9).

Finally, Burnham notes that "[t]he Union Agreement includes the following provisions, which demonstrate another consistent understanding that PTO was responsible for Thomas' safety and his equipment:

> The Union recognizes P.T.O. Services as the sole employer of all employees covered by this Agreement and as the exclusive bargaining agent or party with which the Union is to deal hereunder.
> . . .
>
> [PTO] shall not require employees to take out on the streets or highways any vehicle that is not in safe operating condition or equipped with safety appliances prescribed by law.

*Id*., pp. 12-13 (quoting Exh. G (ECF 28-7), pp. 1 and 15). Burnham argues that the express language in all three contracts shows that "[t]he parties clearly contemplated that PTO functioned as Burnham's independent contractor[]" and so Burnham owed no duty of care to PTO's employees, including Thomas. In summary, Burnham insists that it "relied on PTO and Jackson to provide qualified drivers, train them and make determinations about the proper equipment for them to use . . . . PTO and Jackson exclusively kept, maintained and distributed the equipment at issue. . . . There is no basis to find Burnham owed Thomas a duty by contract, law or course of dealing." *Id*., p. 14. The Agreement between the two companies also mandates the following: 1) "With respect to its employees provided hereunder, P.T.O. will be exclusively responsible for handling personnel Labor Contract and labor relations matters, including arbitration, Federal Agency and Court proceedings." Defendant's Exh. A, p. 4; and  2) "P.T.O. will save [sic] [Burnham] harmless only for those claims by P.T.O. employees against their employer for Workers' Compensation [claims] . . . and which arise out of injuries sustained in the course of

employment by personnel provided [to Burnham] by P.T.O." *Id.* Burnham argues that all of these facts, which it insists are undisputable, prove that PTO was Thomas' employer at the time he was injured and that only PTO owed Thomas a duty of care as a matter of law.

The Indiana Supreme Court in *Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991), set out a seven-part test "[t]o determine if an employer-employee relationship exists[.]" The analysis includes the following factors: "(1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of work boundaries." *Id.* (citing *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709 (Ind.App. 1980)). The Indiana Supreme Court further held that "'the primary consideration is that there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist.'" *Id.* (quoting *Rensing v. Indiana State Univ. Bd. of Trustees*, 444 N.E.2d 1170, 1173 (Ind. 1983)). "[T]he right to exercise control over the manner and means by which the work is to be accomplished is the most important consideration." *Fioretti v. Aztar Indiana Gaming Co., LLC*, 790 N.E.2d 587, 589 (Ind.Ct.App. 2003) (quoting *Moberly v. Day*, 757 N.E.2d 1007, 1010 n. 3 (Ind. 2001)). This test to determine whether an employee-employer relationship exists is well established under Indiana law. *See Degussa Corp. v. Mullens*, 744 N.E.2d 407, 412 (Ind. 2001) (reaffirming the seven-part test and holding that "[t]hese factors are weighed against each other as part of a balancing test in which the right of the employer to exercise control over the employee is given the greatest weight.").

In *Farr v. Laidig Concrete, Inc.*, the Indiana Court of Appeals explained as follows:

The *Hale* test has been used or recognized in a variety of employee/worker's compensation/borrowed servant cases. *See e.g., GKN*, 744 N.E.2d 401 (exclusivity of worker's compensation act in action against general contractor by employee of subcontractor); *Verma v. D.T. Carpentry, LLC*, 805 N.E.2d 430, 433-34 (Ind.Ct.App. 2004) (whether crane operator was borrowed employee of subcontractor for worker's compensation purposes); *Fioretti*, 790 N.E.2d at 589 (question whether actor was employee or agent of party); *Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536, 539-40 (Ind.Ct.App. 1999) (whether actor was "employed" by two different employers for certain aspects of transaction); *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145, 1151 (Ind.Ct.App. 1995) (whether actor employed by special employer such that he was a borrowed servant). . . .

However, our supreme court in *GKN*, stated:

> A number of cases suggest that if a majority of the seven *Hale* factors is present, then an employer-employee relationship exists. However, consistent with *Hale*, we now reaffirm that the factors must be weighed against each other as a part of a balancing test as opposed to a mathematical formula where the majority wins. . . . [W]hen applying this balancing test, the trial court should give the greatest weight to the right of the employer to exercise control over the employee.

*Farr v. Laidig Concrete, Inc.*, 810 N.E.2d 1104, 1106-07 (Ind.Ct.App.), *trans. denied*, 822 N.E.2d 981 (Ind. 2004) (quoting *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001)).

In the present case, Thomas contends that the operations of PTO and Burnham were intertwined to the point that he should be considered an employee of both as a matter of law. He makes many assertions in an attempt to prove that theory and claims that when they are considered as a whole they are sufficient to raise a genuine issue of fact concerning his "employment relationship" with Burnham. Thomas's factual assertions in his opposition brief are an attempt to create what used to be referred to in employment discrimination cases as a "convincing mosaic"–a weaving together of facts (often tenuously related or individually insignificant) presented as a whole cloth. But Thomas's assertions are not convincing and his

mosaic does not hold together when examined against Burnham's evidence, including the express language of the PTO Agreement, the course of dealing between Burnham and PTO, and the evidence that PTO had "control" over Thomas's work. As Burnham puts it: "Burnham was responsible for *scheduling* freight, but PTO was responsible for determining the *manner, means and methods of delivering that freight*. . . . Burnham had no right to control the manner, means or operative detail of how Thomas secured and hauled steel slabs. It relied on PTO to do so." Defendant's Reply, p. 13 (italics in original). That is the key point in this case: notwithstanding Ms. Meurkson's alleged authority to "recommend" that PTO employ certain people (such as Jackson), or that she had input about equipment and safety matters in discussions with Jackson or Whorton, or that the two men (both undisputedly hired and paid by PTO) were provided business cards emblazoned with the Burnham Trucking name and logo, it was PTO who exercised the requisite "control" over Thomas and his work for purposes of determining his employment status. Thomas's allegations, taken as true, support his assertion that the operations of the two companies were intertwined to a degree, but do not support his argument that this alleged "commingling" warrants a finding that *he* should be considered a borrowed servant or dual employee of Burnham as a matter of law; and Burnham's evidence and argument to the contrary is persuasive. For these reasons, Burnham is entitled to summary judgment on Thomas' common law negligence claim.

Burnham presents one last argument in its motion for summary judgment, and it's a solid one, too. Burnham points out that even assuming "the 'borrowed servant' doctrine applies as plaintiff contends, [his claim is] barred by the exclusive remedy provisions of the Indiana Workers' Compensation Act." Defendant's Reply, p. 14. If Thomas was Burnham's borrowed

18

servant or its employee under a dual employer theory, then he "cannot recover from Burnham under a common law tort claim–his claim, like those discussed in *Degussa* and *GKN*, would be barred in tort due to the exclusivity provisions of the [Act]." *Id*. (citations omitted). Indeed, "[t]he Indiana Worker's Compensation Act . . . provides the exclusive remedy for employees who suffer injuries arising out of and in the course of employment. Ind. Code § 22-3-2-6. The Act bars a court from hearing a common-law claim brought against an employer for an on-the-job injury." *Nickels v. Bryant*, 839 N.E.2d 1211, 1215 (Ind.Ct.App. 2005), *trans. denied*, 855 N.E.2d 1008 (Ind. 2006) (citing *GKN*, 744 N.E.2d at 402). The court in *Nickels* also explained that "even where an employee has multiple employers, *the Act remains the employee's exclusive remedy*." *Nickels*, 839 N.E.2d at 1215 (citing *Degussa*, 744 N.E.2d at 412).

At the end of the day, what Thomas is doing is cherry picking facts about the working relationship between PTO and Burnham, specifically the interactions between Meurkson on the one hand and Jackson, Whorton and Bishop on the other. Based on these facts (many of which of course are challenged by Burnham), Thomas makes a leap of faith and argues that this alleged "commingling" of management rendered him a borrowed servant or dual employee, which in turn imposed a duty of care on Burnham. The facts and evidence, however, clearly show that PTO Services, not Burnham, was Thomas's employer and had the right and responsibility to control his work, and his strained attempts to argue otherwise are insufficient to survive summary judgment.

As to Burnham's other two motions–its motion to strike and its motion to deem its statement of material facts admitted–they are rendered moot. The former asks the Court to "enter an order striking the inadmissible and untimely expert opinions" of Sam Werkema, Thomas'

Rule 26(a) expert witness. Burnham argues that Werkema presented conflicting opinions in his Rule 26 report and his subsequent deposition. Werkema's opinions, however, did not come into play since they focused on the suitability of the equipment and training provided to Thomas (which Werkema opined were both faulty). But Werkema's opinions are relevant only to the issue of whether Burnham *breached* its duty of care to Thomas by providing him with faulty equipment, which then caused his injuries. Since the Court concludes that Burnham did not owe any duty of care to Thomas, the issue of breach does not come into the calculus. Burnham's latter motion to deem its statement of material facts admitted is also moot. In that motion, Burnham protests the fact that Thomas, in the "Statement of Genuine Issues" section of his response brief, "has not properly contested [Burnham's Statement of Undisputed Material Facts] in the manner required, deeming those facts admitted for purposes of the pending summary judgment proceedings. [Local Rule] 56-1(b)(2) requires a non-movant to include with its brief 'a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary.' [Thomas' response brief] . . . does not address the specific facts cited by Burnham, does not include citations to the record and does not identify how the facts raised by plaintiff contradict or refute those raised by Burnham." Motion to Deem Facts Admitted, p. 1. Burnham complains that Thomas' response, rather than identifying genuine disputes, "only attempts to raise what he believes to be the disputed facts[]" and that "[t]his approach is insufficient to contest the facts cited by Burnham." *Id*., p. 2. Accordingly, argues Burnham, "[Thomas] has conceded Burnham's Statement of Undisputed Facts by not contesting them in the manner required by N.D. L.R. 56-1(b)." *Id*. Burnham has a point here but it doesn't matter. Burnham has won the war on the dispositive issue and so this underlying battle

need not be waged.

## CONCLUSION

For the reasons discussed above, the motion for summary judgment (ECF 27) is GRANTED and the motion to strike (ECF 36) and the motion to deem statement of facts admitted (ECF 38) are DENIED as moot.

Dated: March 12, 2018.

  /s/   William C. Lee  
William C. Lee, Judge
U.S. District Court
Northern District of Indiana
